All right. We'll call up the fourth case, Sangha v. Navig8. A little maritime case, change the landscape a little bit. All right. Ms. Nigam. May it please the court. My name is Anjali Nigam. I'm here on behalf of Manjit Sangha, the appellant. There are three issues before the court, the first of which is addressed most directly and will dispose of the remainder. The first issue involves protection of federalism interests maintained by the Saving the Suitors Clause created by the 1789 Judiciary Act. The Saving the Suitors Clause, as well as long-standing Supreme Court authority, barred removal of the matter because Captain Sangha's claims do not fall within the district court's original jurisdiction and there's no diversity. Without subject matter jurisdiction, the district court should have sent the matter back to state court without ruling on the merits of the other issues. The second reason why we're in front of this court is the district court abused discretion by holding there was no personal jurisdiction because Navig8, the appellee, failed to provide any evidence to controvert the prima facie evidence submitted by Captain Sangha showing personal jurisdiction existed over Navig8. Third, since Navig8 failed to meet their burden of showing that Singapore was an available and adequate forum, the district court abused discretion by dismissing on a forum non-convened. Therefore, we ask this court to hold this matter should be reversed and remand back to state court because of lack of subject matter jurisdiction. I mean the issue here then is really whether the district court's addressing personal jurisdiction first before getting to savings of suitors. That is one. And whether it falls within the crack that the Supreme Court or maybe more the gap which the Supreme Court designated as a difficult issue to address when personal jurisdiction was an easier issue to address. Now, why did he err in that respect? Because if it is a more difficult issue, then it was proper or at least acceptable for him to address personal jurisdiction first. If you would address that, I'd appreciate it. And I believe that there's a two-part answer to that question. The first with respect to is the issue of subject matter jurisdiction in this matter novel? We'd answer no. It's not a novel issue at the time the district court rendered its opinion. Given the jurisprudence at the district level outlining each of the issues protecting the saving of suitors clause removal bar, the district court had a straightforward record and basis to move and say there's no subject matter jurisdiction without having to consider personal matter jurisdiction. So that's the first part. It wasn't novel. I believe that the Fifth Circuit... Why was it not novel? Well, outside of the fact that there's 59 other district court opinions which say that removal isn't appropriate, there's also some guidance from this court in the Barker opinion which indicates that removal wouldn't have been appropriate. On top of that, there is long... Why is it a difficult issue, though, to say which prevails, the plain language of statutory enacted congressional legislation or a judicially mandated savings to suitors non-removal? Why wouldn't you... Why isn't that difficult? Well, I mean, our argument is it would not have been difficult to find that the removal was inappropriate. I mean, it should have been remanded back because of the Supreme Court's authority telling us that, plus the Barker opinion from this court which indicates that removal... Did it address the specific issue of statutory versus judicial mandate? Well, that gets somewhat into why there might have been some sort of disagreement. I'll tell you the truth. You know, I've been hanging around this stuff for a while. And, I mean, it just has never been raised. And I always just assumed, you know, that the savings to suitors clause without ever paying much attention to it. I mean, because everybody assumed it was. I just didn't question first principles that savings to suitors was essentially said these actions stay in state court. But it doesn't according to statute. Well... I mean, you look at the statute, it says any case of subject matter jurisdiction may be removed. But then the... And the savings to suitors says... All it says is that in admiralty cases, the savings to suitors rights that they have in equity and common law, that can be accomplished in federal or district court just as easy as it can in state court. That's a yes and no answer. Let me start with the reason why you can't automatically get rid of all of those cases and have them heard only in federal court is two reasons. One, when we look to the Supreme Court decision in Romero, because there are federalism concerns, there has to be clear and direct language and a powerful presumption against such an interpretation that the state courts won't have the ability to administer a maritime law. So that's the starting point. And so... Well, they can. I mean, everybody's arguing. I mean, oh, we're saying there are two forums now. We thought there was one forum. Now, apparently, you read the statute and there are two forums. And we agree. There's always been concurrent jurisdiction where it becomes a little bit hinky is when you don't have a federal question or diversity, can you remove this case, which is what happened in this matter. There is no diversity. There is no federal question. And so it should have never been removed. You need an additional jurisdictional grant to take it away from state court. And if we don't, if we do allow for the removal without an additional jurisdictional grant, we are really defying... What is your authority to say that other than 50 years of precedent? I like 50 years of precedent. But I also believe that the Barker case from this court tells us something very similar. Although that one was prior and was determined prior to the 2011 clarification, it did contemplate what the meaning of the clarification was. And in that instance, this court found that you cannot remove cases unless there's an additional jurisdictional grant. Now, Barker was a little different because it was an example of when Congress explicitly comes in and says this maritime issue may only be heard by a federal court. And that's not what... Saying it don't make it so. Well, Romero and the Supreme Court would tell us you have to have something explicit like that there has to... The Supreme Court has never held explicitly that it's non-removable, has it? Well, it hasn't when... If there's an additional jurisdictional grant, I will concede, yeah, you can remove them potentially. But when there isn't, when you don't have diversity or something like that, then you cannot remove them. They have to... I'm sorry to take your time if you need other things. But I was just pointing out that it isn't. To me, it's a difficult issue. But anyway, go ahead. And while I appreciate that when you're doing the analysis of as soon as you can make a jurisdiction analysis, is that novel? There might be some disagreement with respect to that. But in our opinion, when you've got courts from all over the country, including 14 from the Southern District, all saying that removal is improper, it's no longer novel. And it bears noting Justice Miller, who's the first one to start the discussion that removal is appropriate, ended up changing his mind a couple years later in the Sanders' opinion and says, wait, I've been given the additional arguments. I now believe that you should not be able to remove these cases without an additional jurisdictional grant. And so, based off that, it is not a novel issue. And with respect to the personal jurisdiction, we obviously believe that there is an abuse of discretion because of the lack of any controverting evidence. There was ample evidence to support personal jurisdiction. Not only did we have the pleadings, but on top of that, we had an affidavit from Captain Senga, who had actual knowledge of how Navigant ran its business. And in that affidavit, he states that there was all the time. And he also gave details as to why there was specific jurisdiction explaining how the emails had those catastrophic effects in Texas. And Navigant made the choice not to contest any of that. And so, at that point, if you are, if the court is inclined to look at personal jurisdiction, in that instance, it also is, there wasn't anything to counter for the prima facie evidence which was there, which is all that was needed because no evidentiary hearing was conducted. And so, their choice not to try and contest any of that, which they easily could have, is indicative of there should have been a finding of personal jurisdiction. So, at that point, the court would have abused with respect to personal jurisdiction, which we isn't novel. It's just based off of the basic federalism concerns. Courts have consistently found that the concurrent jurisdiction is kept there to preserve the state's right to hear and administer maritime law. And Romero is a prime example of that, which has not been overturned. And it talks about that it is firmly rooted in the state's crucial role. And due to those serious needs, there has to be an explicit expansion of federal district court's power to hear those cases. And as discussed in the Barca case, Oxla is a prime example of that, where Congress came in and said, these cases have to be heard by federal courts, and state courts may not hear them. That's the explicit act that the Supreme Court and Romero would have discussed with respect to usurping that state's powers. In this instance, Appellees sought removal based solely on admiralty jurisdiction. And it's uncontested that Captain Sanga's claims are in personam claims, which are firmly rooted in the state's rights to hear. There's no statute, there's no providing exclusive federal jurisdiction over these common law claims. And therefore, the state court was proper. Allowing for that removal would actually render the State Administrator's Clause, that language, meaningless. Navigate relies on the Ryan opinion and its appropriate. A review of the law, a review of the clarification of 1441, and the plain reading of 1441 doesn't support that contention. Here, as we've talked about, Romero requires something clear and distinct, and there isn't that. More directly, I think, to this court's analysis is Congress made the choice not to amend the Saving the Suitors Clause. And Congress made the choice not to add language in 1441 preventing maritime claims from being heard by the state's court. And because of that, there wouldn't have been subject matter jurisdiction because it should have stayed in state court without any additional diversity or federal question. And so that's why the district court should have found there was no subject matter jurisdiction and kicked it back to the actual... It would have to grapple with what the 2012 amendments. Well... Have that changed and so on and so on and so on. If I may, it's interesting the word amendment. And the reason why I say it's interesting is this court, in that Barker Court, made a point in its opinion to say, this isn't an amendment. It's a clarification. And even more telling is... I mean, I don't know what the difference is. Well, for example, if 1441 had come... I mean, it depends on what you mean by amendment, I guess. Maybe the amendment didn't change anything, but it was an amendment because it changed it. It may not have changed the meaning, but it changed the words and changed the order in which they appeared in the rule. Well, I believe... But I mean, that's Neil. And to support my point, even the title of what occurred is interesting where Congress called it the Federal Courts Jurisdiction and Venue Clarification Act of 2011 rather than an amendment. And the reason why I think that's important is you might have had an explicit expansion or reduction of powers, and that would have been an amendment. It would have been a change. Whereas Congress is telling us, this isn't a change. We're keeping things the same. We're just changing some of the language. We're making it clear and easier for folks to make a determination with respect to diversity. So at that point, it does somewhat make a difference with respect to the language. And this court made a point of making sure that we understood that that's what it was. All right. Thank you, Ms. Bingham. You've maintained your rebuttal time. Mr. Watson? Let me please the Court. I'm Hal Watson. I represent Navigate Ship Management. This is a very straightforward case of statutory interpretation. 28 U.S.C. Section 1441A provides as follows. Except as otherwise expressly provided by an act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed. As this Court stated in Baldwin v. Sears-Robuck, unless there is an express declaration by Congress to the contrary, all types of civil actions in which there is concurrent original jurisdiction in both Federal and State courts are removable. The only statute that the removal is the Savings-to-Suitors Clause. It's the grant of admiralty jurisdiction in Section 1333. This statute provides that the district courts have original jurisdiction of any case of admiralty or maritime jurisdiction, saving to suitors in all cases remedies to which they are otherwise entitled. It doesn't say a word about removal. There is no way to read the As authorities no less than Wright and Miller point out, maritime cases have been removable if there's diversity since 1789. And if the Savings-to-Suitors Clause prohibited removal of Savings-to-Suitors Clause filed in State court, why were Savings-to-Suitors Clause removable when there was diversity of precedent? The removal statute... How did the assumption of non-removability creep into Federal jurisprudence? Through Romero. Historically... Romero, a 1957 case? 1959. And at that time, maritime cases were not removable in the absence of diversity or Federal question, statutory basis. The history of the removal statute in 1789, the only cases that were removable were diversity cases. And that was the situation from 1789 until 1875. In 1875, the removal statute was amended to provide a rising under removal jurisdiction. Cases could be removed on the basis of diversity or if they arose under a Federal statute. Well, in 1875, as Justice Frankfurter pointed out later in Romero, no one considered admiralty cases, cases arising under the general maritime law, to be cases arising under the laws of the United States. Well, that's the situation up until 1948. In 1948, the removal statute was amended again to provide, as it stands right now, basically, any civil action. But you also have to look at the historical context of that language. Prior to the Federal rules of civil procedure, there were three kinds of cases that could be filed by a private litigant in Federal court. Suits of common law, suits in equity, and suits in admiralty. The dichotomy between suits in equity and suits of common law was eliminated by the adoption of the Federal rules of civil procedure. But until 1966, when the Federal rules and the admiralty rules were unified, no one would have considered an admiralty case a civil action. They were suits in admiralty. They had a separate docket. There was the admiralty side of the court. There was the civil side of the court, the law side of the court. And so in 19 — so Justice Frankfurter, writing in 1959, when he said this historic tradition of non-removability of cases in admiralty, one, he was only speaking about — he never mentioned the language of the statute, of the removal statute. And so that — and that, if you look at all the cases that contain the language talking about the non-removability of cases, unless there's — I mean, Romero, I mean, in a holding, in his holding, did it ever decide specifically that saving to suitors is non-removal? No, no. The holding — The predictor, I mean. Romero — Romero was not a removal case. Romero was a case filed on the, quote, law side, as it existed at that time, under the Jones Act. And the question in Romero was whether the plaintiff's general maritime law claims for unseaworthiness and maintenance and cure, whether he could file those on the law side as well and get a jury under 28 U.S.C. Section 1331. That's the issue in the case. And Judge — and Justice Frankfurter and the court held, those are not cases — those claims, the general maritime claims, don't arise under the laws of the United States. They're general maritime law claims. Let's assume saving to suitors is not — I mean, is removable, and it's removed to federal court. Is it triable to a jury? It can be, yes, Your Honor. I mean, on two different bases. One basis would be Rule 39 permits the parties to consent. And the court could certainly say, unless you consent, I'm not going to — I'm going to remand the case. And this Court has been — this Court and the Supreme Court have both had shown great flexibility in allowing jury trials in admiralty cases. There's no absolute right to a trial by jury in an admiralty case. But, for example, in — there's a case, Lura v. — we did not cite this in the brief, but the — in Lura v. the MV Alberta. This Court was — the plaintiff filed a Jones Act case and asked for a jury, and also filed in rem proceedings against the offending vessels. And this Court said, well, he gets a jury trial on everything. I mean, so there's — you know, there's — this Court has — this Court, and — which was — and citing the Fitzgerald v. United States Lines case, where the Court said that if a plaintiff joined Jones Act case, which is entitled to a jury, with general maritime law claims of unseaworthiness and maintenance of security, he gets a trial by jury on the whole thing. I mean, the Courts have flexibility to allow jury trials. There's nothing that prohibits a jury trial in an admiralty case. You know, it's not mandated, but it's — but it certainly can be permitted. The only — you know, the discussion of the cases, the — all the district cases, court cases that have said — and there are a sizable number of cases that say you can remove an admiralty case, and a sizable number of cases that say you can't. The theory that most of the cases that say that you cannot remove an admiralty case go off on is the notion that somehow when a case is filed in State court under the Savings to Suitors Clause, it ceases to be a case of admiralty or maritime jurisdiction. And that has been rebutted by the Supreme Court and this Court and the Seventh Circuit. In Romero, in fact — and I — we, again, did not cite this, but at page 367 of the Romero opinion at note 23, Justice Frankfurter says the following. All suits involving maritime claims, regardless of the remedy sought, are cases of admiralty maritime jurisdiction within the meaning of Article III, whether they are asserted in the Federal courts or under the Savings Clause in the State courts, directly contradicts that notion. This Court in Barras v. Sulpico lines, Barras is a case — a Death on the High Seas Act case that was removed to Federal court. The Death on the High Seas Act is a statute that was passed in 1920 when there was — where there were suits in admiralty. And the Death on the High Seas Act, by its terms, allows a suit in admiralty. And the courts have held that this — and a suit in admiralty can only be filed — the suit on the Death on the High Seas Act, there's concurrent jurisdiction with the State courts, but it can only be filed in Federal court under admiralty jurisdiction. You can't file a — a suit on the Death on the High Seas Act in — in Federal court based upon arising under jurisdiction under Section 1331. And the Court held that the Court had subject matter jurisdiction over the case after it was removed. Well, if the Court had subject matter jurisdiction, that means that it — just what Justice Frankfurter said in that — in that footnote, that it remained a case of admiralty and maritime jurisdiction even when it was filed in State court under the same suitor's clause. The courts reached the same conclusion in a case called Ragus R-A-G-A-S v. Tennessee Gas Pipeline. And that was a case that involved the General Maritime Law. It was a case involving an elision between a vessel and an unmarked pipeline. And the Court, again, said that the Court had subject matter jurisdiction over the removed case. The Seventh Circuit in a case called — What role do the clarifying amendments, 2012 clarifying amendments, make in terms of the need — I mean, the need to recognize the removability of savings? Well, I'll be very candid, Your Honor. In this case, I don't think it makes any difference at all because — all — the substantive difference in those — in that — in those amendments is that it changed the emphasis — it changed the — what I'll refer to as the forum defendant rule. Before the amendments, the forum defendant rule applied to all cases other than arising under other than cases where jurisdiction was based upon 1331. What the amendments do is they say now — and so that — so admiralty cases were cases — all other cases, and thus were subject to the forum defendant rule, and there was no way to remove an admiralty case if the defendant was a citizen of the State where the suit was filed. That, for instance, is the holding of applies to diversity cases. The real significance of the 2011 amendments is that it — people started looking at the statute. The Maritime Bar, quite frankly, had been asleep at the wheel for about 50 years, and acting on the same assumption as the courts, well, you can't remove an admiralty case. After the amendments, people looked at the statute, which, of course, is where you ought to look first, I submit. And when you have — I mean, this Court has said that when you have an unambiguous statute, you stop looking. You know, that's the starting point and the ending point. In this case, we have an unambiguous statute. It says unless — except as otherwise expressly by act of Congress. It doesn't say except as expressly provided by act of Congress and historically understood by the Vention Bar. I submit the statute is clear and unequivocal. But, I mean, it's been clear and unequivocal for a long time. You're correct. It's been — since 1966. The — the critical — what critically happened in 1966 is the merger of the — of the Federal — of the Federal rules of civil procedure and the admiralty rules. And Rule 2 of the Federal rules of civil procedure says there shall be one form of action, the civil action. And that's the rule that makes admiralty cases civil actions. So since 1966, admiralty cases should have been removal. And just no one — and there's a couple things that are surprising. One, that no one thought about it, because none of the cases discuss this. You know, none of — none of the cases in this Court discuss the fact — discuss the language of the removal statute. So it's rather remarkable that the Bench and Bar — well, mostly, but, you know, you guys can only do what we put before you. But that the — that members of the Maritime Bar didn't pick up on this. I'm reminded of something my mentor, Grant Gilmore, told me. He told me, when I was studying with him, that when he had said — when Charlie Black and I started writing the law of admiralty, no one knew less about maritime law than we did unless it was the Maritime Bar. So he may have been right. So as I said, that, you know, the — the historic — the tradition that admiralty cases were not removable certainly was true, because until 1966, there was simply no statutory basis to remove an admiralty case. And that kind of affected people — the way people thought about it. I've already addressed the question of jury trial. And the Supreme Court and this Court have repeatedly pointed out that what the saving to suitors clause preserves is remedies, not forums. Back in the — back in the — I want to say it was the 1840s, in the Moses Taylor, Justice Field said, is not a remedy in the common law courts which is saved, but a common law remedy. And this Court has repeatedly stated that, you know, the plaintiff does not have a right to — to his forum if there is a basis to remove the case. And as I pointed out, there's nothing that prohibits jury trials in — in admiralty cases. The one thing that's — that the plaintiff argues in the brief is that there are things other than the mere fact of a jury trial, that things like Vordaer and things like that. Well, you know, prior to 1938, my understanding is that the federal courts applied state procedure in — in the district courts. Obviously, after 1938, they're applying the federal rules of civil procedure. No one has ever suggested that the fact that when you remove a maritime case based upon diversity or federal questions and whatnot, and you get a different set of procedural rules because you get the federal rules of civil procedure rather than the procedural rules that would have applied in the state court. No one has ever suggested that that's an impediment to removing that case. So, you know, the courts have flexibility to provide the same remedies in — in federal court of removed cases they have in — in state court. You — I'd like to point out a — a ruling that you can remove a case based upon admiralty jurisdiction alone. It's going to affect a relatively small number of cases. The vast majority of maritime cases are Siemens personal injury cases. And, of course, they're non-removable by statute. Again, Congress knows how to prohibit — expressly prohibit removal of a case. Section — 28 U.S.C. Section 1445 lists a number of kinds of cases that cannot be removed. Presumably, if they're — you know, if — that's — that's an — an example of an express prohibition as envisioned by Section 1441a. If you go beyond that, many, many maritime cases are based on a Federal statute. Cargo claims are governed by the Carriage of Bids by Sea Act. Many — if you get to, say, talk about collision cases, they're all filed in Federal court because very often you want to get security and you need to arrest the vessel to get security for your collision case. We're talking — we're talking about a — we're not talking about a major change in — in admiralty practice by doing this. It will affect — it would certainly affect some cases, like this case. But — Well, we're — I mean, we're getting off the track a little bit, are we not? Because the issue here is whether that's a difficult issue. And if it — if it is, then we can proceed to address personal jurisdiction first. And the case can turn on personal jurisdiction. Well, I suppose we're going to look at this differently. I would say that the subject matter jurisdiction, the removal jurisdiction question, is even simpler because it turns on the language of an unambiguous statute, the personal — And then if we did that, would we have to remand for the district court to make a determination? I mean, the district court decided this on personal jurisdiction, right? I — and I think the district court — and I was about to get to that — the district court, I think, was correct in that. The way I looked at the case, I mean, is whether the district court was proper in addressing personal jurisdiction before it got to the removal issue. Well, it addressed — the court addressed both. The court denied the motion to remand and — Well, I know it denied the motion for remand. Is anybody considering — claiming here that if we uphold the district court on the basis of personal jurisdiction, that the case should be remanded? I mean, in other words, if it — No, no. I mean, if the court — if you uphold the decision — If the federal court doesn't have personal jurisdiction — The case is still dismissed. It's dismissed and not remanded. That's correct, Your Honor. And because the state court — the state — the law of Texas is that it permits — it permits personal jurisdiction to the extent that the Constitution will allow, and if it doesn't allow — if it doesn't allow it in federal court, it doesn't allow it in state court, is that — That would be correct. And on the personal jurisdiction issue, I mean, the facts are that my client is being sued for sending two emails, one from London to Alabama and one from Singapore to Alabama. And the vessel at the time, if you look in the record at page 84 of the record on appeal — Basically, what you're asking us to do is decide a law that we don't need to decide. And if you were asking us to decide the removability of the case, because if we decide personal jurisdiction, it's over. We don't have to address removability. I concede that point, Your Honor. What you take to be — your viewpoint is that the removability — the subject matter jurisdiction question is not novel and complex. You say it's straightforward based on what the statute says. I think that — yes, Your Honor. I think it can be — I won't say it's not — it's not novel in the sense that it has never been addressed. You know, I mean, it's — I mean, it is — That's the way you define novelty. It's novel because the courts have never directly addressed it. But I think it's a relatively simple question. I mean, the two cases that I think one should look at are — it all started with Judge in Ryan v. Hercules, where he did exactly what I think that he should have done, which was look at the language. So it's not really a difficult issue, even if it requires us to — even if it — even if the position that you had taken is contrary to all precedent up until now. Right. I mean, there's — It's not novel. It's novel in the sense that, while the courts have talked about it, every one of the cases that — Isn't that double speech? If the court goes back to basics, which is to the language of the statute, it's not a difficult decision. All of the language in all the cases since Romero are dictum. There's never been a case — if you look at the — OK. You've got a red light. Please, Judge Owen. What — you were about to say, what does page 84 of the record say? Oh, yes. That was just — I was going to say, that gives the coordinates of where the vessel, where the plaintiff was located at the time these emails were sent. And if you go to a website that will translate coordinates into a location, the vessel was in the Gulf of Mexico in international waters at the time of the email. So the notion that somehow that the — that there was specific jurisdiction because my client did — What was his normal route? I don't know. I don't know, Your Honor. But that's where — they were making a ship-to-ship transfer of cargo in international waters off the coast of Texas. Notwithstanding your view that previously the subject matter jurisdiction question had not been addressed the way it is, even though the statute makes it straightforward, that being said, you don't quarrel with Judge Hughes' choice not to address that and to decide the matter on personal jurisdiction? Well, Your Honor, I don't — I differ with the characterization of what he did. To reach the — he reached both issues. The order says the motion to remand is denied, and then he — and he grants the — and he grants — I mean, he addressed both issues. Okay. Thank you. All right. Thank you. Rebuttal? I believe that there are two statements which are quite telling from the arguments that we've just heard. The first is the concession that the subject matter jurisdiction analysis wasn't novel. The second, in conjunction, is that the 2011 clarification has nothing to do with this case. Here's why that's important. There is an abundance of law, decades' worth, coming from the Supreme Court on down, which all find that unless there is an additional jurisdictional grant, these issues cannot get removed. At no point in time have we contended that cases cannot get removed. We simply say it's concurrent jurisdiction, and there has to be — Who said that? Who said that you have to have other grounds for removal other than savings of suitors or an admittance clause? Well, it's a savings of suitors that adds the additional — if you're going to — That says it's not removable. And as long as there's additional — there's diversity. If there was diversity in this case, I wouldn't be standing in front of this — Who says that? Well, it comes from Romero. It comes from this Court in Barker. Well, I think it comes from Romero. I mean, if it does, it comes in the most circuitous way. Well, it also comes from the Linton case, which is also from this Court, which talks of — There comes from cases, not from the statute. And that's correct. There is an interpretation. But that being said, that is an interpretation where there hasn't been enough to overcome that. We have so much authority that indicates to us there has to be something extra. Otherwise, then the savings of suitors clause is absolutely meaningless. Why else would they have carved out the ability to file in state? I mean, obviously, if you respect the savings of suitors clause and call it non-removable, if it is removable, they get the same rights as they would get if it were in state court on the savings of suitors. And that's correct. And that's why we have the Seventh Amendment analysis as well as other state remedies. Well, I mean, that's what I would say. I mean, it preserves, but it doesn't say you can't exercise those rights in federal court. Well, it's not just a jury trial. And I'll say that the Linton case from this Court specifically kind of identifies the federal jurisdiction doesn't turn on if there's a jury trial. In that instance, the plaintiff made the option not to seek out a jury trial. And the defendants sought out to get that case removed. All remedies, whether it's jury trial or, you know, pecuniary damages. That's right. Whatever. Whatever rights he has in state court. I'm not sure about this, but you transfer most of it to him. Well, I mean, there's pre-judgment interest. There's for Dyer. There's evidentiary concerns. There's a slew of other things that are available in state court, which is not in federal. Procedure. You probably weren't entitled to procedure. Right. And let me also add, there's no such thing as a discretionary jury trial. That would be a new animal for us, where you can just go ahead and determine, hey, we know that the law says something different, but we're going to go ahead and allow for a jury trial. And that would arbitrarily allow for defendants to make the decision of, we're going to go ahead and allow it for this. But there are other state remedies. And all of the cases, when they talk about this, it's, they identify the Seventh Amendment first and foremost. And they always say, and preserve, there are other state remedies. After all this discussion that we've had with you and counsel Opsit, you're going to stick to the question that this is not a novel issue, and it's not complicated and more difficult to discern than personal jurisdiction. You're going to stick to that? I am. You really want to? Well, but let me say this. If we do look to the personal jurisdiction issue, which we can, in that instance, all that we had to do was provide a prima facie showing of personal jurisdiction because no evidentiary hearing was heard. What ended up happening is on the other side, they failed to controvert any of the evidence. And so that's also why we allege that the district court abused discretion when it came to personal jurisdiction. They had every chance, every opportunity to say that the affidavit is wrong or the pleadings are wrong. They never contested either general jurisdiction or specific jurisdiction. They just let it sit. And because they chose not to controvert that, the district court also abused discretion because there was ample evidence to support a finding of personal jurisdiction, which is in the briefing. And that failure is why the district court was abused discretion. So while I'm not conceding that this is some sort of complicated issue on the subject matter, I will say if the court then decides to look at personal jurisdiction first, there still was an abuse of discretion because there wasn't the contesting of the evidence. If that had occurred, it would be a different matter. Thank you. All right. Thank you, counsel. Thank you. Counsel, both sides. Interesting case, to put it mildly.